IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                          :        BKY. NO. 09-11204
PHILADELPHIA NEWSPAPERS, LLC    :
                                :

_____

ALYCIA LANE                     :        CIVIL ACTION
        Appellant,              :        NO. 09-4065
                                :
    v.                          :
                                :
PHILADELPHIA NEWSPAPERS, LLC,   :
                                :
        Appellees.              :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          January 11, 2010
_____

        Before the Court is an appeal from an order of the

Bankruptcy Court which clarified the terms of a preliminary

injunction to prohibit continuation of all aspects of pending

state court litigation against the above-captioned debtors'

employees.


I.    **BACKGROUND**

        Philadelphia Newspapers, LLC and its related debtor-

entities (collectively, the "Debtors") filed for Chapter 11

bankruptcy protection on February 22, 2009.[1]  Prior to this

bankruptcy filing, Appellant Alycia Lane ("Lane") commenced an

_____

        [1]    Unless otherwise indicated, all chapter, section, and
rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-
1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-
9037.

action in the Pennsylvania Court of Common Pleas (the "Lane Action") against the following defendants, CBS Broadcasting, Inc. ("CBS"), Michael Colleran ("Colleran"), Lawrence Mendte ("Mendte"), Philadelphia Newspapers, LLC d/b/a the Daily News ("PNL"), Philadelphia Media Holdings ("PMH"), and Dan Gross ("Gross").[2] Both PNL and PMH are Debtors in the above-captioned case. Gross is a reporter for the Daily News/PNL. CBS, Colleran and Mendte are not affiliated with the Debtors.

After the Debtors filed their respective bankruptcy petitions, both PNL and PMH were voluntarily dismissed from the Lane Action in order to allow Lane to proceed against the non-debtor entities in state court. Gross continues to be employed by the Debtors and remains a defendant in the Lane Action.

On March 23, 2009, the Debtors commenced an adversary proceeding (the "Adversary Proceeding") against several defendants, including Lane, and filed a motion for a temporary restraining order and preliminary injunction. On April 14, 2009, the Bankruptcy Court entered a temporary restraining order ("TRO") which precluded further litigation against Gross.[3]

---

[2]   That case currently is pending in the Pennsylvania Court of Common Pleas and is styled as <u>Alycia Lane v. CBS Broadcasting, Inc. t/a KYW-TV, Michael Colleran, Lawrence Mendte, Philadelphia Media Holdings, LLC, Philadelphia Newspapers, LLC t/a Philadelphia Daily News, and Dan Gross</u>, September Term 2008, No. 003425.

[3]   At the April 6, 2009 hearing, in response to an inquiry as to the scope of the TRO, the Bankruptcy Court stated that "it

On May 7, 2009, the Bankruptcy Court held an evidentiary hearing with respect to the Debtors' request for the entry of a preliminary injunction. Following this hearing, the Bankruptcy Court entered the preliminary injunction (the "Injunction") on May 8, 2009. The Injunction states, in pertinent part:

> Pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, effective immediately and for a period of sixty (60) days from the date of entry of this order, the scope of the automatic stay is extended to include the Non-Debtors,[4] and Defendants are enjoined from continuing any action or legal proceeding (including, without limitation, any judicial quasi-judicial administrative or regulatory action, proceeding or process whatsoever), by way of direct claim, counterclaim, crossclaim, appeal or any other action against Non-Debtors, based upon the matters encompassed within the Second Amended Complaint, as may be further amended.

Id. at 407 (citing Order Granting Motion For Preliminary Injunction Pursuant to 11 U.S.C. § 105, Rule 65 of the Federal Rules of Civil Procedure, and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure, May 8, 2009 at 3).

---

does seem to me that what is good for the goose is definitely good for the gander, and to the extent that the stay is being applied to this litigation it is being applied to all parties who are least before me here today to that litigation." In re Philadelphia Newspapers, LLC, 410 B.R. 404, 406 (Bankr. E.D. Pa. 2009) ("Philadelphia Newspapers I") (citing TRO Hr'g Tr. 98, April 6, 2009).

[4] The May 8, 2009 Order defined the term "Non-Debtors" to include "certain reporters, editors or other employees of Debtor Philadelphia Newspapers, LLC," which ostensibly includes Gross.

On May 18, 2009, another defendant in the Adversary Proceeding, Charter School Management, Inc., appealed the entry of the Injunction to this Court. On July 2, 2009, this Court affirmed the Bankruptcy Court's entry of the Injunction and held that: (1) the Bankruptcy Court had jurisdiction to issue the Injunction; (2) the Bankruptcy Court properly extended the automatic stay provided by 11 U.S.C. § 362 to the Non-Debtors; and (3) the Bankruptcy Court acted within its discretion to issue the Injunction pursuant to 11 U.S.C. § 105(a). In re Philadelphia Newspapers, LLC, 407 B.R. 606, 615-18 (E.D. Pa. 2009) ("Philadelphia Newspapers II").

Subsequent to this Court's affirming the issuance of the Injunction, the Bankruptcy Court extended the expiration date of the Injunction on July 6, 2009, August 21, 2009, and October 30, 2009, respectively. In its current form, the Injunction is tailored to continue at least through confirmation of the Debtors' plan of reorganization.[5]

On June 10, 2009, while the Injunction was in effect and the appeal of the May 8, 2009 Order was pending before this Court, the Debtors filed a Motion for Clarification of Scope of Preliminary Injunction (the "Clarification Motion"). The purpose

_____

[5] When confirmation will actually occur is uncertain given that an appeal concerning the appropriate bidding procedures for an auction is currently before the Third Circuit Court of Appeals.

of the Clarification Motion was to request a ruling from the Bankruptcy Court as to whether the Injunction imposed reciprocal restrictions and barred the Debtors from pursuing their claims or defenses in the cases underlying the Adversary Proceeding, including the Lane Action.  During the hearing on the Clarification Motion, Lane's counsel requested that the Bankruptcy Court limit the scope of the Injunction to allow Lane to proceed with discovery concerning Gross in the context of the Lane Action.

On August 5, 2009, the Bankruptcy Court issued an Order and Opinion in response to the Clarification Motion (the "August 5 Opinion").  In the August 5 Opinion, the Bankruptcy Court held that it possessed the power to enjoin third parties from pursuing discovery and that it was a proper exercise of its discretion to issue such an Injunction in the instant case.  Philadelphia I, 410 B.R. at 412-15.  In the August 5 Opinion, the Bankruptcy Court explicitly rejected Lane's argument that section 105(a) of the Bankruptcy Code could not be invoked in order to effectuate the automatic stay of section 362 to the Non-Debtors under the present circumstances.  Id. at 413.

Furthermore, the Bankruptcy Court found that imposition of an Injunction to shield the Non-Debtors, including Gross, from discovery was in the best interest of the Debtors' estates in accordance with the requirements of section 105(a).  Id. at 414-

15.  On this issue, the Bankruptcy Court specifically found that extension of the Injunction was warranted because the Debtors have undertaken an obligation to indemnify employees like Gross with respect to litigation such as the Lane Action.  Id. at 414. Therefore, the Bankruptcy Court concluded that "each piece of litigation costs the company time, money, and effort."  Id. Moreover, the Court found that such litigation diverted the Debtors' key employees, such as their General Counsel (Scott Baker) and CEO (Brian Tierney), from the focus of the Debtors' overall reorganization efforts, which require considerable attention.  Id. at 414-15.  Finally, the Bankruptcy Court concluded that if Lane were permitted to conduct discovery with respect to Non-Debtor defendants in the Lane Action then litigants in other cases may seek to assert the same privilege, such that the "cumulative effect and drain on the Debtors of handling such discovery and motion practice could be enormous." Id. at 415.

On August 10, 2009, Appellant Lane filed a notice of appeal of the Bankruptcy Court's August 5 Opinion.  Lane appealed the August 5 Opinion on the ground that the Bankruptcy Court's application of the Injunction to prohibit discovery with respect to Gross constitutes a reversible error.  The parties have fully briefed the issues presented and this appeal is ripe for adjudication by this Court.

## II. **DISCUSSION**[6]

### A. Standard of Review

This Court applies a clearly erroneous standard to a bankruptcy court's findings of fact, plenary review over its conclusions of law, and bifurcates mixed questions of law and fact to apply the appropriate standard to each. See In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989).[7] The Bankruptcy Court's issuance of a preliminary injunction is to be reviewed by this Court for abuse of discretion. See Philadelphia Newspapers II, 407 B.R. at 610 (citing In re Pillowtex, Inc., 304 F.3d 246, 250 (3d Cir. 2002)). "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F.3d 108, 118 (3d Cir. 2004) (quoting Official Comm. of Unsecured

---

[6]    This Court has jurisdiction to hear appeals "from final judgments, orders and decrees of the Bankruptcy Court." 28 U.S.C. §§ 158(a)(1). As the August 5 Opinion represents a final order, a finding that is not challenged by either party, this Court may properly exercise jurisdiction over this appeal.

[7]    Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

Creditors v. Nucor Corp. ( In re SGL Carbon Corp.), 200 F.3d 154, 159 (3d Cir. 1999)).

B.   Analysis

This Court recently outlined the three steps necessary in determining whether the issuance of a preliminary injunction extending the automatic stay to non-debtor third parties under section 105(a) is appropriate: (1) whether the Bankruptcy Court had jurisdiction to issue the injunction; (2) whether the Bankruptcy Court properly extended the automatic stay under section 362(a) to the non-debtors; and (3) whether the Bankruptcy Court properly exercised its discretion in issuing the injunction.   Philadelphia Newspapers II, 407 B.R. at 611.[8]   The

_____

[8]    The Court recognizes that the caselaw concerning the use of authority conferred by section 105(a) to implement the substantive powers created by section 362(a) is not entirely consistent.   See id. (noting that courts have often conflated the analysis of sections 362(a) and 105(a), and confused the issue); compare A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999-1003 (4th Cir. 1986) (using "stay" and "injunction" interchangeably and pointing out that the bankruptcy court may enjoin lawsuits under section 362(a), section 105(a), or its inherent power) with In re Monroe Well Serv., Inc., 67 B.R. 746, 751 (Bankr. E.D. Pa. 1986) (granting an injunction under section 105(a), without discussion of section 362(a)).   It is unnecessary, however, for the Court to delve into this analytical quagmire in order to resolve the current appeal.   The parties spent a good deal of effort debating whether the order issued by the Bankruptcy Court constituted the extension of the stay under section 362(a) or an injunction under section 105(a).   Faced with a similar issue, Judge Yohn stated:

    [I]t is unclear whether the Third Circuit views staying
    an action to aid a debtor's reorganization the result
    of extending the § 362(a) stay or the result of issuing
    a separate injunction pursuant to, for example, a

same analytical framework applies to this case.  As the same
reasoning applies to the instant appeal, it is only necessary to
briefly review the bases for the Court's approval of the
Injunction in the Philadelphia Newspapers II decision.  To the
extent that any substantive differences exist, they are addressed
in detail herein.[9]

1.  Jurisdiction

"While § 105(a) of the Bankruptcy Code allows a
bankruptcy court to issue any order necessary to carry out the
provisions of the Code, it 'does not provide an independent
source of federal subject matter jurisdiction.'"  In re W.R.
Grace & Co., --- F.3d ---, 2009 WL 5151089, at *4 (3d Cir. Dec.
31, 2009) (quoting In re Combustion Eng'g, Inc., 391 F.3d 190,
225 (3d Cir. 2004)).  Therefore, before proceeding to the merits

_____

district court's inherent power to stay a pending
action or a bankruptcy court's power under § 105(a).
This issue is academic, however, as the practical
effect (i.e., the staying of an action) is the same
regardless of the means employed.

Stanford v. Foamex L.P., Civ. A. No. 07-4225, 2009 WL 1033607, at
*1 n.7 (E.D. Pa. Apr. 15, 2009).  This Court agrees that the
exact terminology used by the Bankruptcy Court in issuing the
Injunction is of no moment for purposes of this appeal.

[9]     The state court litigation previously considered by the
Court in Philadelphia Newspapers II involved a defamation action
filed by Charter School Management, Inc.  The Lane Action
involves state law claims for unlawful interception of electronic
communications, invasion of privacy, intentional infliction of
emotional distress, and civil conspiracy.  For purposes of the
analysis of the Injunction, the differences between the claims
asserted in these respective suits are not substantive.

- 9 -

of an injunction under section 105(a), it is the duty of the Bankruptcy Court to establish that it has subject matter jurisdiction to issue the injunction. Id. (citing Combustion Eng'g, 391 F.3d at 225 n.35).

In Philadelphia Newspapers II, this Court concluded that jurisdiction was properly exercised by the Bankruptcy Court under "related to" jurisdiction provided by 28 U.S.C. § 1334(b) due to the impact of the litigation on the Debtors' reorganization efforts as well as the Debtors' practice of indemnifying its employees. Philadelphia Newspapers II, 407 B.R. at 614-15. The same grounds justifying "related to" jurisdiction exist with respect to application of the Injunction to the Lane Action in that monitoring discovery in the Lane Action will divert the attention of the Debtors' personnel and the Debtors may be obligated to indemnify Gross in the event of a judgment. Appellant Lane does not challenge the Bankruptcy Court's exercise of jurisdiction. Therefore, the Court concludes that the Bankruptcy Court properly exercised jurisdiction with respect to the Injunction.

2.   Entitlement to Extension of Section 362(a) Stay

The next step in this analysis is a determination of whether the Bankruptcy Court properly extended the protection of section 362(a) to Gross. This constitutes a mixed question of law and fact for which the Court must decide whether the

Bankruptcy Court's decision rested upon an errant conclusion or law or clearly erroneous finding of fact.  See <u>Integrated Telecom Express</u>, 384 F.3d at 118.

The Third Circuit has recognized that section 362(a)'s protection is applicable to non-debtors where "unusual circumstances" exist, such as a unity of interest between the non-debtor and the debtor.  <u>See</u> <u>McCartney v. Integra Nat. Bank N.</u>, 106 F.3d 506, 509-10 (3d Cir. 1997) (citing <u>A.H. Robins Co.</u>, 788 F.2d at 999); <u>Belcufine v. Aloe</u>, 112 F.3d 633, 637 n.5 (3d Cir. 1997) (citing <u>McCartney</u> and stating that the rationale for applying the automatic stay to non-debtors first articulated in <u>Robbins</u> has been adopted in the Third Circuit).  Whether unusual circumstances exist is an issue of fact.

In <u>Philadelphia Newspapers II</u>, this Court found that "unusual circumstances" existed to justify extension of the automatic stay for two reasons: (1) the Debtors owed potential indemnification obligations to their employees involved in state court litigation, such that the interests of the Debtors and their employees were identical; and (2) the diversion of resources involved with defending the pending state court litigation would divert the Debtors' resources and adversely impact the Debtors' attempted reorganization.  <u>Philadelphia Newspapers II</u>, 407 B.R. at 616.  As the same circumstances exist with respect to the Lane Action, the Court holds that the Bankruptcy Court's finding that sufficient "unusual circumstances" existed to justify extension of section 362(a) to

Gross was not clearly erroneous.

Appellant Lane contends, however, that in this
instance, section 362(a) could not have been extended to Gross
because the Debtors themselves were not protected from requests
for production of information by the automatic stay.  Appellant
Lane argues that section 362(a) does not shield a debtor from
responding to discovery requests with respect to claims which are
not being asserted against the debtor.  If this is so, Appellant
Lane argues, section 105(a) could not be used to "extend" to Non-
Debtors a protection that is not available to the Debtors under
section 362(a) in the first instance.  Whether a request for
discovery from the Debtors falls within the protection of section
362(a) is an issue of law.

Appellant Lane relies on <u>Groner v. Miller (In re</u>
<u>Miller)</u>, 262 B.R. 499, 503-507 (B.A.P. 9th Cir. 2001), in which a
Bankruptcy Appellate Panel for the Ninth Circuit found that
discovery requests served on a debtor in multi-defendant
litigation that did not involve claims against the debtor did not
violate the automatic stay.  The court in <u>Miller</u>, relying solely
on an analysis of the text of section 362(a),[10] reasoned that

--------------------------------------------------

[10]    Section 362(a) states in pertinent part:

(a) Except as provided in subsection (b) of this
section, a petition filed under section 301, 302, or
303 of this title, or an application filed under
section 5(a)(3) of the Securities Investor Protection
Act of 1970, operates as a stay, applicable to all

"information is information" and the mere fact that such
information is sought from a debtor does not itself render it a
violation of the automatic stay.  <u>Miller</u>, 262 B.R. at 505.
Although no circuit courts have addressed the <u>Miller</u> rationale, a
number of bankruptcy courts and district courts have applied it.
<u>See, e.g.</u>, <u>In re Hillsborough Holdings Corp.</u>, 130 B.R. 603, 605-
06 (Bankr. M.D. Fla. 1991) (holding that the debtor was not
protected from participating in discovery by section 362(a), but
recognizing that "under appropriate circumstances it is proper to
'extend the automatic stay' to protect the non-debtors against
discovery proceedings"); <u>In re Richard B. Vance & Co.</u>, 289 B.R.
692, 697 (Bankr. C.D. Ill. 2003) (noting that although "there are
valid arguments to the contrary, it is now generally accepted
that discovery pertaining to claims against the bankrupts'
codefendants is not stayed"); <u>Peter Rosenbaum Photography Corp.</u>
<u>v. Otto Doosan Mail Order Ltd.</u>, Civ. A. No. 04-0767, 2004 WL
2973822, at *3 (N.D. Ill. Nov. 30, 2004) (relying on <u>Miller</u> and

---

entities, of--

> (1) the commencement or continuation, including
> the issuance or employment of process, of a
> judicial, administrative, or other action or
> proceeding against the debtor that was or could
> have been commenced before the commencement of the
> case under this title, or to recover a claim
> against the debtor that arose before the
> commencement of the case under this title . . . .

11 U.S.C. § 362(a).

finding that discovery may proceed against a debtor provided that the discovery is directed towards the claims of non-debtor defendants).

The Court need not decide whether <u>Miller</u> states the applicable principle, a matter that is far from certain, since, in any event, <u>Miller</u> is distinguishable. In <u>Miller</u>, the discovery requests involved "information" to be used in a lawsuit the outcome of which would not affect the debtor or property of the debtor. Here, as stated above, the "information" sought is to be used in the prosecution of an action in which the employee of the Debtors is a defendant, which if found liable, the Debtors could have an obligation to indemnify. This obligation to indemnify, if triggered, would affect the property of the Debtors' estates. Thus, while in <u>Miller</u> the discovery requests would under no circumstances affect the property of the debtor, so much cannot be said here.

Therefore, the Court concludes that Appellant Lane's reliance on <u>Miller</u> is inapposite and that the Bankruptcy Court properly extended the automatic stay based upon the "unusual circumstances" present in this case.

3. Injunction under Section 105(a)

The final step in the Court's analysis is the determination of whether the Bankruptcy Court abused its discretion in finding that the Injunction shielded Gross from

participating in discovery in the Lane Action.  The Court applies
the deferential abuse of discretion standard to this question.

Section 105 of the Bankruptcy Code states, in relevant
part, "[t]he court may issue any order, process, or judgment that
is necessary or appropriate to carry out the provisions of this
title."  11 U.S.C. § 105(a).  As the Third Circuit specifically
explained in Combustion Engineering, section 105(a) does not
create substantive rights that do not otherwise exist within the
Bankruptcy Code.  Combustion Eng'g, 391 F.3d at 236 (internal
citations omitted).

The issuance of an injunction under section 105(a) is
governed by the standards generally applicable to the issuance of
injunctive relief in non-bankruptcy contexts.  See Matter of
Brennan, 198 B.R. 445, 452 (D.N.J. 1996) ("In determining whether
to issue a § 105 stay, bankruptcy courts also use [the]
traditional four-pronged analysis.") (citing In re Zenith Labs.,
Inc., 104 B.R. 659, 665 (D.N.J. 1989)); In re W.R. Grace & Co.,
386 B.R. 17, 32 (Bankr. D. Del. 2008) (applying the traditional
standards for injunctive relief with respect to a request to
extend a preliminary injunction under section 105(a)) (citing In
re Excel Innovations, Inc., 502 F.3d 1086, 1096 (9th Cir. 2007)).
As this Court explained in Philadelphia Newspapers II, a
preliminary injunction is an extraordinary remedy that is only
appropriate in limited circumstances.  Philadelphia Newspapers

- 15 -

II, 407 B.R. at 616; see Kos Pharms., Inc. v. Andrx Corp., 369
F.3d 700, 708 (3d Cir. 2004) (quoting Am. Tel. & Tel. Co. v.
Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir.
1994)).

In order to be entitled to a preliminary injunction,
the burden is upon the moving party to satisfy the following
factors:

> (1) whether the movant has shown a reasonable
> probability of success on the merits; (2) whether the
> movant will be irreparably injured by denial of the
> relief; (3) whether granting preliminary relief will
> result in even greater harm to the nonmoving party; and
> (4) whether granting the preliminary relief will be in
> the public interest.

McTernan v. City of York, Pa., 577 F.3d 521, 527 (3d Cir. 2009)
(quoting United States v. Bell, 414 F.3d 474, 478 n.4 (3d Cir.
2005)).[11]  The concept of a reasonable likelihood of success
under the first prong is interpreted by bankruptcy courts as the
equivalent of the debtor's ability to successfully reorganize.
See Philadelphia Newspapers II, 407 B.R. at 617 n.15 (citing
Monroe Well, 67 B.R. at 752-53).

Appellant Lane contends that the Bankruptcy Court
abused its discretion by prohibiting Gross' participation in

---

[11]     In considering a request for an injunction, these four
factors are not weighed simultaneously against one another.
Rather, the Court determines whether the first two threshold
prongs are established, and if so, only then does it proceed to
consider the third and fourth factors.  Tenafly Eruv Ass'n, Inc.
v. Borough of Tenafly, 309 F.3d 144, 157 (3d Cir. 2002).

discovery with regard to her claims against the non-debtor co-defendants in the Lane Action, namely CBS, Colleran, and Mendte.

The Bankruptcy Court found that it was appropriate to extend the Injunction to Gross.  Although the Bankruptcy Court did not address each of the factors individually in its August 5 Opinion, it addressed each factor in the original opinion.  See Philadelphia Newspapers I, 410 B.R. at 414-15.[12]  In its August 5 Opinion the Bankruptcy Court further elaborated that in light of the Debtors' potential indemnification obligations to its employees, in the absence of an injunction the Debtors would be forced to spend time, money, and effort with respect to each pending suit.  Id. at 414.  The Bankruptcy Court also found that "[t]his case, a large and complex Chapter 11 with many employees being sued, presents the unusual circumstance of a Debtor needing the time and space of a § 105 injunction extended to non-debtor employees."  Id.  The Bankruptcy Court further concluded that unless all the pending litigation was stayed completely, it would serve to divert the attention of the Debtors' key personnel, and

_____

[12]     In its original opinion, the Bankruptcy Court concluded that it was necessary to grant the Debtors' request to issue the Injunction based upon the following: (1) a reasonable likelihood of successful reorganization was demonstrated by the Debtors; (2) a danger of irreparable harm existed since continuation of state court litigation would distract the Debtors' key personnel from the focus of reorganization; (3) the balancing of harm between the parties favored the Debtors, particularly in light of the relatively short period of the Injunction; and (4) the public interest in the successful reorganization of a local institution trumped a state claimant's right to redress.  Id. at 617.

that allowing Lane to proceed with discovery could open the
floodgates to allow all other litigants to pursue the same
course.  Id. at 415.  The Bankruptcy Court found that the
"cumulative effect" of the litigation against the Debtors and
their employees on the Debtors' reorganization efforts "could be
enormous," and therefore determined that imposition of the
Injunction to all aspects of pending litigation, including Lane's
discovery against Gross, was necessary.  Id.

The Bankruptcy Court acknowledged that Lane was
prejudiced by the delay imposed by the Injunction, but after
weighing the relative harm between all the parties, the
Bankruptcy Court found that the equities favored the Debtors'
position.  Id.

The Court concludes that Lane has failed to meet her
burden of showing that the Bankruptcy Court abused its discretion
in refusing to tailor the Injunction to allow discovery from
Gross to continue.  As explained above, the Bankruptcy Court
determined that allowing such discovery would interfere with the
Debtors' reorganization in light of the diversion of the Debtors'
attention to monitor discovery in the Lane Action.[13]  Based upon

_____

[13]  Lane's counsel has argued that the discovery sought
involves only Gross and would not interfere with the Debtors, as
she seeks only Gross' deposition and certain documents created by
Gross.  The Debtors respond, however, that because of the
coextensive interest between the Debtors and Gross based upon the
Debtors' alleged indemnification obligations, the Debtors'
personnel would need to monitor Gross' participation in discovery

the deferential standard to be applied to the decision of the Bankruptcy Court to issue an injunction pursuant to section 105(a), the Court concludes that Lane has failed to demonstrate that an abuse of discretion occurred.

The Third Circuit's decision in In re W.R. Grace & Co., 115 Fed. Appx. 565 (3d Cir. 2004) (non-precedential opinion), while not binding precedent, is supportive of this result. In W.R. Grace, the Third Circuit was presented with the question of whether the Bankruptcy Court abused its discretion, in responding to a request for clarification, by refusing to modify a section 105 injunction to allow litigation to proceed against the debtor's worker's compensation insurance carrier. Id. at 568. The Third Circuit reiterated that "[a] decision by a bankruptcy court whether or not to clarify or modify a § 105 injunction is an equitable one, and issues within the equitable discretion of a bankruptcy court should be overturned only for abuse of discretion," and that the burden was upon the movants to demonstrate that the injunction was improper when applied to them. Id. (citing Penn Terra, Ltd. v. Dep't of Envtl. Res., 733 F.2d 267, 274 (3d Cir. 1984)).

---

in the Lane Action. Furthermore, the Debtors emphasize that any documents created during Gross' employment are the Debtors' proprietary property, and not Gross' individual property. Therefore, although the target of Lane's intended discovery is Gross, the discovery she seeks to obtain implicates the interests of the Debtors as well.

The movants in <u>W.R. Grace</u> argued that the injunction
should not apply to them because the litigation would not
directly affect the debtor since the claims were asserted only
against the insurance carrier, although the movants acknowledged
that they would seek discovery against the debtor in pursuing
their claims against the debtor's insurance carrier.  <u>Id.</u> at 569.
The Bankruptcy Court in <u>W.R. Grace</u> refused to modify the
injunction since the prospect of indemnification by the debtor
necessitated the stay, and in spite of the movants' contention
that the discovery requested from the debtor would not disrupt
the reorganization process.  <u>Id.</u>

On appeal, the Third Circuit concluded that it had
"little difficulty" in finding that the movants could not satisfy
their burden of demonstrating that the Bankruptcy Court abused
its discretion in refusing to modify the stay.  <u>Id.</u>  The Third
Circuit noted that courts employ a "broader view of the potential
impact on the debtor" and found that a stay is appropriate where
the litigation "could interfere with the reorganization of the
debtor, or would interfere with, deplete or adversely affect
property of [the] estates or which would frustrate the statutory
scheme of chapter 11 or diminish [the debtor's] ability to
formulate a plan of reorganization."  <u>Id.</u> at 570 (internal
quotation marks and citations omitted and alterations in
original).

Finally, Appellant Lane is not without a potential avenue of relief to proceed with the requested discovery separate and apart from any general bar to litigation against the other employees of the Debtors.  To the extent that Lane wishes to take limited discovery from the Debtors or their employees, which according to her will have a _de minimis_ impact on both Gross and the Debtors, this request and the attendant exigent circumstances should be presented in the first place to the Bankruptcy Court, which is in the best position to evaluate it, in the form of a request for a limited modification of the Injunction.

## III. CONCLUSION

For the reasons discussed above, the decision of the Bankruptcy Court to extend the Injunction to Gross is **AFFIRMED**. An appropriate order will issue.